Hitchcock, J.
The facts of the original case which is sought to be reviewed, as the same appear from the pleadings and evidence, are as follows :
Alexander Wells, on the 16th of July, 1838, executed to the Farmers’ and Mechanics’ Bank of Steubenville, a mortgage to secure the payment of certain moneys, which were then due, or that might thereafter become due, from the firm of Wells, Henry & Co., of which said Wells was one, to the said bank. On the 30th day of the same month, the said Wells executed to the same bank another mortgage, covering other property, for the same object as expressed in the former mortgage. Alexander Wells afterwards died testate. His executor, having power under the will so to do, conveyed the real estate included in the aforesaid mortgage to Francis A. Wells, James Henry add Robert Hanlin, who, subsequent to the death of said Alexander Wells, constituted the firm of Wells, Henry and Company.
On the 4th day of February, 1839, Francis A. Wells, another member of the firm'of Wells, Henry & Co., also executed a similar mortgage to the said bank for the same purpose as before stated.
On the same 4th day of February, 1839, Robert Hanlin,' another member of the firm of Wells, Henry & Co., executed to the said bank a mortgage for the same purpose as expressed in the deeds before referred to.
On the same 4th day of February, 1839, James Henry, another member of the firm of Wells, Henry & Co., executed a similar mortgage to said bank, and for a like object.
*255 The said Wells, Henry & Co., having obtained loans of the said bank, which it was claimed were secured by said mortgage, and which were unpaid, the bank at the'May term of the Court of Common Pleas, 1842, filed a bill in Chancery to have these several mortgages foreclosed, and to compel the salé of the mortgaged premises for the payment of the amount due from the said Wells, Henry & Co. To this bill the said Francis Á. Wells, James Henry and Robert Hanlin, were made defendants. Alexander Doyle was also made defendant, it being charged in the bill that said Doyle had procured a mortgage upon the same premises, subsequent in date to the mortgage of the bank, for the purpose of indemnifying him, as security on said indebtedness of the said Wells, Henry & Co., to said bank.
Afterwards, Robert Hanlin and Francis A. Wells answered said bill, admitting their indebtedness to the bank, and the execution of the mortgages.
At the November term of the Court, the complainants in this bill of review, together with others, were made defendants to the original bill in their own motion, they being judgment creditors of the said Wells, Henry & Co.; and at the same term the then complainant had leave to file an original and supplemental bill, which ■ amended and supplemental bill was filed on the 15th of April, 1843.
In this supplemental bill, it is charged that, subsequent to the filing the original bill, certain deeds of mortgage, made by Hanlin and Francis A. Wells, to John McDowel, executor of Alexander Wells, bearing date the 28th day of February, 1839, had been left for record and recorded on the 30th September, 1842, which deeds cover the whole, or a part of the premises, included in the mortgage to the bank. McDowel is made a defendant. It is further charged that, subsequent to the filing of the original bill, certain persons named in said supplemental bill, had recovered judgment against the said Wells, Henry & Co., that said judgment creditors had been made defendants, as their own motion to the original bill makes them defend *256 ants to the amended bill, and prays that they may be ruled to .answer, &c¿
On. the 16th January,. 1843, Richard Ellison, one of the judgment creditors, filed his answer, setting forth his judgment, claiming that it was a lien upon the lands mortgaged, and to be preferred to. the mortgages to the bank. This judgment was- rendered at the March term of the Court of Common Pleas of Carroll county, 1842. Execution was issued and levied upon a part of the lands in controversy.
At the.May term of said Court of Common Pleas, 1843, the other defendants, who were judgment creditors, filed demurrers to the bill, and at the same term John McDowel filed his answer. In this, he sets forth his mortgages upon thé premises in controversy — claims that his is the preferable lien — charges that' complainants had notice of his mortgage — prays a sale of the mortgaged premises, &c.
At the August term of the Court, 1843, Hanlin and F. A. Wells filed their answer to the supplemental bill.
At the same term Alexander Doyle filed his answer to the original and supplemental bill. In his answer he sets forth his mortgages, which bear date the 25th day of May, 1840. The conditions of these mortgages were, that whereas the said Alexander Doyle had theretofore indorsed-the paper of the said Wells, Henry & Co., and had also promised to make further .indorsements, it was provided that if the said Wells,. Henry & Co. should indemnify and save harmless the said Doyle, then the said deed to be void, &c. The respondent stated further, that, relying upon this indemnity, he had continued to indorse the paper of the said Wells, Henry & Co.; that he was liable to the bank as. security for them; that his mortgages were preferable liens to the mortgages of McDowel, or to the liens of the judgment creditors; that they were next in point of time to the mortgages of the bank, and if those mortgages were held not to be valid, then that his lien was to be preferred to all others; and in such event he prayed that the premises might be sold, and the avails applied to his indemnity, &c.
*257 At the May term of the Court, 1843, the case came on for hearing upon the demurrer of the judgment creditors, which were overruled, and the cause referred to a master to ascertain the amount due the complainant, and upon their respective claims, with the origin of said debt, and the nature thereof; the amount due to McDowel, and the several judgment creditors, with the interest thereon; the dates, and nature of the respective liens, &c., with power to take testimony, &c., and with orders to have the mortgaged premises appraised, &c., return to be made at the next term of the Court.
In pursuance of this order, the premises were appraised, and at the August term, 1843, the master made his report.
In this report he ascertained the amounts due the several creditors having liens upon the property, either by mortgage or otherwise, with the date of the commencément of the respective liens, the consideration of the several debts secured by mortgage, &c. By this report it appears that there was due to the bank on the mortgage of Alexander Wells, $2,636.64; and that the amount due from Wells, Henry & Co., was $14,-549.18.
That the amount of liabilities secured by the mortgages to Alexander Doyle, was $14,968.09, and that judgments have been rendered against him upon these liabilities, in favor of the trustees of the bank.
That the amount due John McDowel, was as follows: From Francis A. Wells, $15,240; from James Henry, $7,948; from Robert Hanlin, $4,238.93.
To this report, no exception was taken.
At the same term of the Court, to wit, at the August term, 1843, the case came on for hearing upon the bills, answers, exhibits, testimony, and master’s report. On the hearing, the Court found that the mortgage deeds purporting to be executed by Alexander Wells, on the 16th and 30th days of July, 1838, were duly executed, and that there was due to the then complainant the sum of $2,636.64, which was intended to be secured by said mortgages. That the several mortgage deeds, *258 dated February 4, 1839, executed by Francis A. Wells, James Henry, and Robert Hanlin, respectively, to the bank, were intended to secure the sum of $14,549.18, due, at the date of the decree, for principal and interest, from Wells, Henry & Co. The Court further found that the said Wells, Henry and Hanlin, did execute the several mortgages to Alexander Doyle, mentioned in the bill, and made part of Doyle’s answer; and that the same were valid and subsisting liens upon the premises therein described; and that the said Doyle, relying thereon, had indorsed the paper of Wells, Henry & Co., and had become, and was then liable, by reason of his indorsements, in the sum of $14,549.18, for principal and interest. That the said mortgages to John McDowel were duly executed, in manner and form as set forth, and for the purposes in said bill specified; but that the same had lost their priority in consequence of not being recorded in due time ; and that the other judgments and mortgage liens were correctly stated and set forth in the master’s report.
The Court thereupon adjudged and decreed, that the said mortgages given to the bank, being given to secure other debts than those previously contracted, and due at the time of their respective dates, were void under the charter of said bank, and that the mortgages to Alexander Doyle, and filed with his answer, were the first valid and subsisting liens upon the premises therein described. That the said Doyle, having indorsed the paper of the said Wells, Henry & Co. to a large amount, which was not paid by them, but returned under protest, and the said Wells, Henry and Hanlin, having failed to indemnify and save harmless the said Doyle, from all lossand harm the re-from, and that judgments by reason thereof have been rendered against Doyle to a large amount, to wit, to the amount of $14,549.18, in favor of the trustees of the Farmers’ and Mechanics’ Bank of Steubenville, the Court thereupon found, that the condition of the said mortgage deeds to said Doyle had been forfeited, and that the said Doyle was well entitled to be saved from all loss and harm by a sale of the premises in said *259 deeds mentioned, as prayed for in his answer; It was, thereupon, ordered, adjudged, and decreed, that unless the said Doyle, within five days from the rising of the Court, should be indemnified against said judgments, and secured from all loss and harm in respect thereto, by the said Wells, Henry and Hanlin, or by some incumbrancer or incumbrancers of said premises, subsequent to said Doyle, that the said premises, in said mortgage deeds described, should be appraised and sold for that purpose. And it was further ordered,- that the proceeds of said sale be applied, first, to the payment of the costs of the suit; second, to the payment of the judgments in favor of the trustees of the bank against Doyle; third, to discharge the liens of other' mortgages and judgments, according to their priority, as ascertained by the master in his report; fourth, the residue, if any, to be brought into Court, to be disposed of as the Court should order.
In pursuance of this decree, the property was sold. The foregoing is but a brief and imperfect abstract of a very voluminous record, but is believed to be sufficient for a correct understanding and disposition of the questions raised by the complainants in their bill of review.
The complainants are a part of the judgment creditors, who, at their own request, were made defendants in the original case.
The first error assigned is, that the Court decreed the mortgages made to the said Doyle to be good, subsisting and valid liens, on the said mortgaged estate, when it is apparent that the same were not good and valid liens on said estate as against the complainants.
Several reasons are set forth under this assignment, which will be considered. And first, it is said the mortgages were not good and valid as against the complainants, because they were void for uncertainty, and it could not be ascertained how or when the same became forfeited, nor how the same could or would be satisfied.
*260 • I do not perceive that there was any difficulty in this respect. Wells, Henry & Co. had procured accommodations at the bank, and were anxious to procure further accommodation. Doyle had been security upon their paper, and he was willing further to go security for them provided he could have indemnity. He had a right to ask the indemnity, and Wells, Henry & Co. had a right to give it. It was done by way of mortgage ; and although these mortgages were intended to cover subsequent as well as previous liabilities, they could not, on this account, be objectionable as between the parties. During the existence of these mortgages, had a third person recovered a judgment against Wells, Henry & Co., the lien of such judgment might, and probably would be preferred to the lien of the mortgages for liabilities subsequently'incurred by Doyle. But these complainants are not in this situation. The liabilities of Doyle had been fixed before the rendition of their judgments. It is not perceived that there would be .any difficulty in ascertaining when the conditions of the deeds were broken and the mortgage forfeited, nor as to the manner in which they could be satisfied.
Another reason assigned why the said mortgages are void as to complainants, is, that as to them, there was no sufficient or valid consideration passing to the grantors from the said Doyle, for the same, so far as the contemplated prospective' liabilities of the said Doyle to the said Wells, Henry & Co. were concerned, for the said Doyle was in no way bound to indorse any paper for them; and so the same was and is void, for a total want of consideration. .
If Doyle had not indorsed the paper, or- made himself security for Wells, Henry & Co., the mortgage would have been void for want of consideration, or, in other words, it would not have operated as an indemnity, for there would have been nothing against which any indemnity could have been required. It is true, too, that Doyle was under no legal obligation to indorse ; but when he did indorse, and thereby made himself liable for Wells, Henry & Co., as was contemplated when the *261 mortgage was executed, I do not perceive with what propriety it can be said there was no consideration.
Another objection to the validity of these mortgages, as against the complainants, is, that the said mortgages were never forfeited, so far as the contemplated prospective liabilities are concerned, for the said Doyle did not indorse any paper for Wells, Henry & Co.; but that the proof offered shows that Doyle was principal debtor and not security. i
The case shows that, at the proper stage, the subject was referred to a Master, to examine and report, with leave to take testimony. He took testimony and reported, ascertaining the amount for which Doyle was liable, as security for Wells, Henry & Company, and which was within the condition of the mortgages. He further reported, that .Doyle was not only liable as aforesaid, but that, upon these liabilities, judgment had been recovered against him, by the trustees of the bank, for a sum of more than fourteen thousand dollars. To this report the present complainants, who were there at their own request, before the Court as defendants,, took no exceptions. And the report not being excepted to, the Court confirmed it, and decreed accordingly. Surely, under the then existing circumstances, no other decree could have been rendered.
The second error assigned, is, that inasmuch as the original complainant could not avail itself directly, it ought not to avail itself indirectly of the said mortgage to the said Doyle; and it is said that this is the suit and decree of the bank, and not of Doyle.
The record in the case shows, that, although the original bill was filed by the bank against Wells, Henry & Hanlin, to foreclose the equity of redemption in certain premises, mortgaged by them to the bank, and also against Doyle, as a subsequent mortgagee; yet, subsequently, all those claiming to have liens upon the property, either by mortgage or judgment, came before the Court and were made parties, most of them by their own request: the defendants, who -were mortgagees, praying, in their answers, to have the mortgaged premises sold, and the *262 avails applied as the Court might think proper. The case Anally presented to the Court was one where several persons, conflicting liens upon the same property, were calling upon the Court to ascertain their respective rights and priorities. Under such circumstances, I do not see that there was any thing wrong, although the Court found the mortgages of the complainants to be void, that a decree should be entered for the sale of the property, and for the proper distribution of the avails. The bill might have been dismissed upon this finding, but it seems to me the Court adopted the better course.
But with what propriety this can be said to be a decree of the bank, and not of Doyle, I do not readily perceive. Doyle, as the security of Wells, Henry & Company, was indebted to the bank more than fourteen thousand dollars, for which judgments had been recovered. Now, so far as the interest of the bank was concerned, it was immaterial whether these judgments were satisfied by Doyle, or by Wells, Henry & Company. But with Doyle it did make a difference. It,was for his interest that the judgments should be satisfied from the property of Wells, Henry & Company. They had pledged to him property, to indemnify him against his liability. And when the Court decreed that this property should be sold, and the avails applied to the payment of these judgments, it was but the carrying out of the original contract between Wells, Henry & Company, and Doyle, by which they agreed to indemnify him. By the execution of the decree of the Court, he would be indemnified to the extent of the value of the property. Now, although the money arising from the sale is to be paid to the trustees of the bank, the decree directing such payment is a decree rather in favor of Doyle than of the bank. It was what he asked for in his answer. He does hot complain of it, and there is no reason why these complainants should; it does them no injury.
The third error assigned, is, that it was erroneous to decree that this property should be sold, under Doyle’s mortgage, to pay the judgments of the bank, because Doyle was in no way *263 damnified, as he had paid nothing, and was not moving in the matter.
As before stated, all the parties in the original case were before the Court, and might be considered as actors, or as moving in the matter. They were before the Court as holders of liens upon the same property, seeking to establish their respective priorities. More especially was this the case with Doyle, as is apparent from his answer, as already stated. In consequence of the rendition of the judgments against him, he was so far damnified that he might, with propriety, have the property, mortgaged to him, sold to satisfy that judgment.— Besides, I have no doubt that the bank itself, having judgments against Wells, Henry & Company, as principal debtors, and Doyje as security, might, in equity, subject the property mortgaged by the principal debtor, to the security, as indemnity, to be sold for the satisfaction of such judgments.
The next assignment is, that it was erroneous to decree certain bonds, executed by Wells, Henry & Company as principals, and Doyle as security, good, because the same were usurious, and such as the bank had no power to receive. ■
To this it is sufficient to say, that there is nothing in the record from which it can be inferred that any such error existed, or does exist. The error assigned is entirely without the record, and is not sustained by it, nor by any of the exhibits or proofs in the case.
It is, in the last place, assigned, that it was erroneous to enter up any decree in.favor of the bank, because its charter had expired, and the said bank had no legal existence at the time of the decree rendered.
It is true, that the charter of the bank expired during the pendency of the suit, but the suit did not thereby abate. The law made express provision that, in such case, pending suits should be prosecuted by the trustees. And, in this case, the decree is not in favor of the bank, as such; but it is, that the money made by the sale of the mortgaged premises, shall be applied in satisfaction of judgments recovered by the trustees *264 0f the bank. From this it is apparent that, in this respect, , , . there was nothing wrong.
Upon full consideration, we are of opinion that there is nothing erroneous in the decree complained of, and the bill Í8 therefore dismissed, with costs.